**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION**

| | |
|---|---|
| **CHRYSTELE MCKANDES,** *et al.*, | |
| **Plaintiffs,** | |
| **v.** | **Civil Action No.  AW-04-743** |
| **CAREFIRST, INC.,** *et al.*, | |
| **Defendants.** | |

## <u>MEMORANDUM OPINION</u>

Chrystele McKandes ("McKandes") and Maxine McCollough ("McCollough") (collectively, "Plaintiffs") bring this action against CareFirst BlueChoice, Inc. ("BlueChoice" or "Defendant"), alleging violations of the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq.*, and Maryland common law. Plaintiffs seek reimbursement of monies paid to Defendant pursuant to subrogation clauses in its employee welfare benefit and health insurance plans.

Currently before the Court are Plaintiffs' Motion for Class Certification [56] and Defendant's Motion for Reconsideration [59] of the Court's August 31, 2005 Memorandum Opinion and Order granting-in-part and denying-in-part Defendant's motion for summary judgment. The Court held a hearing regarding these motions on May 18, 2006.  Having heard from all the parties, considered the arguments made in open court, and reviewed the pleadings with respect to the instant motions, it is the opinion of the Court that Defendant's Motion for Reconsideration should be denied and that Plaintiffs' Motion for Class Certification should be held in abeyance to permit the parties to gather and present further evidence with respect to whether McCollough, one of the individual named plaintiffs, is indeed a member of the class she purports to represent.

## FACTUAL & PROCEDURAL BACKGROUND

I.     **Factual Background**

The facts of this case were previously set forth by the Court in its August 31, 2005 Memorandum Opinion.  Nevertheless, the Court will restate the facts relevant to the pending motions. This case stems from the Maryland Court of Appeals' decision in *Riemer v. Columbia Medical Plan, Inc.*, where Riemer and others sued Columbia Medical Plan ("CMP"), an HMO of Blue Cross Blue Shield, asserting that CMP was statutorily prohibited from collecting subrogation from its members. 358 Md. 222 (2000). The Maryland Court of Appeals held that "an HMO may not pursue its members for restitution, reimbursement or subrogation after the members have received damages from a third-party tortfeasor." *Riemer*, 35 Md. at 258.  In response to the holding of *Riemer*, the Maryland legislature enacted a statute, amending the Maryland HMO Act, to provide that an HMO *is* authorized to pursue subrogation with respect to members' recoveries from third parties.  2000 Md. Laws ch. 659 (enacting Md. Health Gen. Code Ann. § 19-713(d) effective June 1, 2000).  That legislation provided that it would apply retroactively to all subrogation recoveries by HMOs.  *Id.*  In *Harvey v. Kaiser Foundation*, 370 Md. 604 (2002), the Maryland Court of Appeals declared retroactive sections of the HMO Act unconstitutional. Consequently, as Maryland law now stands, the subrogation prohibition of the HMO Act remained applicable to actions occurring prior to June 1, 2000.

Plaintiffs each allege to have made pre-June 1, 2000 subrogation payments to BlueChoice—payments which, pursuant to *Riemer*, Defendant was not lawfully entitled to collect. McKandes, an employee of the Prince George's County, Maryland ("PG County") public schools, received health care benefits through a welfare benefit plan provided by the PG County public

schools.  As part of her welfare benefit plan, McKandes was a member of the CapitalCare HMO, which is now known as BlueChoice. On March 3, 1999, McKandes was injured in an automobile accident, and McKandes received medical treatment in conjunction with that accident.  Following McKandes's accident, a company calling itself CareFirst BlueCross BlueShield ("CareFirst")[1] asserted that it had its own independent right of subrogation against McKandes for medical benefits that it claimed to have provided.  On April 14, 1999, McKandes received a letter stating that "[u]nder the subrogation provision of our contract . . . CareFirst BlueCross Blue Shield [] has the right of recovery . . . for benefits we have paid . . ."  On April 16, 1999, McKandes's liability attorney received a similar letter confirming that the attorney would "represent the right of subrogration of CareFirst BlueCross BlueShield [] for Chrystele McKandes."  On August 20, 1999, McKandes's attorney received another letter, this one stating that CareFirst "has provided benefits for medical expenses incurred by Chrystele McKandes as a result of the injury sustained on March 3, 1999."  On September 14, 1999, McKandes recovered $5,000.00 from the Government Employees Insurance Company to resolve a tort claim arising from her auto accident.  McKandes ultimately paid $183.37 in subrogation to CareFirst out of the proceeds of her settlement.

McCollough, an employee of Sibley Memorial Hospital ("Sibley"), received health care benefits through a welfare benefit plan sponsored by her employer.  Similar to McKandes, McCollough was injured in an automobile accident.  On June 5, 1998, McCollough received a payment in settlement for her tort claims arising out of that accident.  In response to subrogation liens asserted by CareFirst, McCollough paid $109.00 out of her settlement proceeds to pay off the

---

[1] According to the record, CareFirst BlueCross BlueShield is the trade name by which CareFirst and its various affiliates conduct business.  For the sake of simplicity, the Court will refer to both aforementioned entities as "CareFirst."

subrogation lien.

## II.   Procedural Background

On May 31, 2000, McKandes, as the sole named plaintiff, initially filed suit on behalf of a class of allegedly similar situated individuals, in the Maryland Circuit Court for Prince George's County against a single Defendant named "Blue Cross Blue Shield Association."  McKandes then filed a First Amended Complaint, adding two Defendants: Group Hospitalization and Medical Services, Inc. ("GHMSI") and Capital Care, Inc.

On December 26, 2000, this case was removed for the first time to this Court and subsequently stayed on stipulation of the parties.  On January 30, 2003, this Court granted Plaintiff leave to file her Second Amended Complaint,[2] and concluded in a Memorandum Opinion that McKandes's claims were not completely ERISA preempted, and remanded this action back to state court.

Back in state court, on March 26, 2003, Plaintiffs filed their Third Amended Complaint. McKandes remained as a Plaintiff, and two new named Plaintiffs joined the action: McCollough and Erdye Johnson.  Plaintiffs dropped "Blue Cross and Blue Shield Association" as a Defendant, and continued the action against the other four Defendants.

On October 9, 2003, Plaintiffs filed a Fourth Amended Complaint.  Johnson was dropped as a Plaintiff, leaving McKandes and McCollough as the only named Plaintiffs.  Also, Plaintiffs maintained CareFirst and FreeState as Defendants but dropped PHN.  Plaintiffs also added Delmarva

---

[2] The Second Amended Complaint changed the Defendants.  "Blue Cross and Blue Shield Association" remained as a Defendant, but GHMSI and Capital Care were no longer Defendants.  McKandes also added four new Defendants: CareFirst, FreeState, CareFirst BlueChoice, Inc. ("Blue Choice"), and Preferred Health Network of Maryland, Inc. ("PHN").

Health Plan, Inc. and Healthcare Corporation of the Mid-Atlantic as Defendants.

In state court, Plaintiffs moved for class certification before Hon. William B. Spellbring, Jr. Following two days of hearing, on November 26, 2003, the state court denied class certification in a full decision from the bench.

On February 13, 2004, following the denial of class certification, Plaintiffs filed their Fifth Amended Complaint in state court asserting for the first time claims arising under ERISA.[3] Counts I and II of the Fifth Amended Complaint alleged denial of benefits due under an ERISA plan pursuant to 29 U.S.C. § 1132(a)(1)(B) and violation of the terms of an ERISA plan pursuant to 29 U.S.C. § 1132(a)(3). Counts III and IV assert common law claims of fraudulent misrepresentation and unjust enrichment. Specifically, Plaintiffs allege that they are entitled to receive the full amount of covered medical services free of any claim by Defendant for subrogation of, or reimbursement for, any recoveries from third party tort claims. Because these claims presented questions of federal law, Defendants removed this action on March 12, 2004, pursuant to 28 U.S.C. § 1441, to this Court.

After the parties engaged in substantial discovery, Defendants moved for summary judgment, arguing primarily that: (1) Plaintiffs lacked a viable cause of action under *Riemer* because they were members of self-funded, rather than insured, medical plans; (2) Plaintiffs lacked standing to assert claims against several of the named defendants because, at all times relevant to the complaint, those defendants were entirely separate corporate entities that had nothing to do with the underlying subrogation claims. In its August 31, 2005 Memorandum Opinion, this Court rejected Defendants'

---

[3] The Fifth Amended Complaint was brought by McKandes and McCollough, but Defendants Delmarva Health Plan, Inc. and HealthCare Corporation of Mid-Atlantic were dropped as Defendants.

first argument, finding that neither *Riemer* nor the Maryland HMO Act, upon which the *Riemer* court relied, made any distinction between fully insured or self-funded HMO plans. The Court further concluded that even if *Riemer* applied only to fully insured plans, there existed a genuine dispute of material fact as to whether Plaintiffs' plans were fully insured or self-funded, thereby making summary judgment on that issue inappropriate. The Court agreed, however, that several of the defendants were not proper parties, and granted summary judgment in favor of defendants CareFirst and FreeState, dismissing them from the action. Thus, Defendant BlueChoice became the sole remaining defendant in this suit. In addition, the Court directed the parties to contact chambers to schedule a trial date, and a two-three day jury trial was set for February 28, 2006.

On October 25, 2005, Plaintiffs filed a motion for class certification. On December 14, 2005, BlueChoice filed what is essentially a hybrid motion for reconsideration/memorandum in opposition to Plaintiff's motion for class certification. On January 20, 2006, the parties jointly requested, and the Court agreed, that the scheduled trial should be postponed until after the Court ruled on the pending motion for class certification. A hearing on the instant motions was held on May 18, 2006.

## ANALYSIS

### I.       Defendant's Motion for Reconsideration

Defendant's motion for reconsideration urges the Court to reassess some of the conclusions it reached in its August 31, 2005 Memorandum Opinion and Order and, additionally, to deny Plaintiffs' motion for class certification. Although, as Defendant suggests, there may exist a connection between the issues surrounding the already adjudicated summary judgment motion and those raised by the instant request for class certification, this asserted link is insufficient to overcome the requirements of Local Rule 105.10, which states that "[e]xcept as otherwise provided in Fed. R.

Civ. P. 60, any motion to reconsider any order issued by the Court shall be filed with the Clerk not later than 10 days after entry of the order." Defendant's motion for reconsideration, which was filed more than three months after the Court's partial denial of summary judgment, is plainly untimely. In addition, Defendant's motion does not fall within the Fed. R. Civ. P. 60 exception, which applies to "final" judgments and orders. Fed. R. Civ. P. 60(b). An order denying summary judgment is merely interlocutory. *O'Connor v. U.S.*, 956 F.2d 48, 52 (4th Cir. 1992). Thus, to the extent Defendant seeks reconsideration of the Court's August 31, 2005 Opinion and Order, Defendant's motion shall be denied.

## II.     Plaintiffs' Motion for Class Certification

Class certification is governed by the standards set forth in Federal Rule of Civil Procedure 23. Fed. R. Civ. P. 23; *Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 457 (4th Cir. 2003). First, the class must comply with the prerequisites established in Rule 23(a): (1) numerosity of parties; (2) commonality of factual and legal issues; (3) typicality of claims and defenses of class representatives; and (4) adequacy of representation. The Fourth Circuit has explained that the final three requirements "tend to merge, with commonality and typicality serving as guideposts for determining whether maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Id.* (*quoting Broussard*, 155 F.3d at 337). Second, the class action must fall within one of the three categories enumerated in Rule 23(b); here Plaintiffs seek to proceed under Rule 23(b)(3), which requires that common issues predominate over individual ones and that a class action be superior to other available methods of adjudication. Fed. R. Civ. P. 23(b)(3); *id.*

Plaintiffs request that this Court certify the following class:

> All persons who (1) are or have been members or insureds of CareFirst Bluechoice; (2) have received medical or health care treatment or services from CareFirst BlueChoice; and (3) prior to June 1, 2000, paid a subrogation claim (however described) to CareFirst BlueChoice in satisfaction of a lien against or a subrogation interest of CareFirst BlueChoice in any monies that the members of insureds had received or would receive from a third party.

> Excluded from the Class are (1) federal government employees who are "insureds" under federal employee health insurance contracts governed by the Federal Employees Health Benefits Act ("FEHBA"), 5 U.S.C. §§ 8901, *et seq*; (2) those individuals who are or have ever been employees of CareFirst BlueChoice and the spouses, parents, siblings, and children of all such individuals; (3) CareFirst BlueChoice members or insureds who are or have been members of CareFirst BlueChoice through ERISA benefit plans that are self-funded within the meaning of 28 U.S.C. § 514(b)(2)(B); and (4) CareFirst BlueChoice members or insureds who received their insurance with CareFirst BlueChoice through Medicare.

In addition, Plaintiffs' Fifth Amended Complaint provides for the creation of two subclasses:

> Subclass A consists of all members of the Class who are or have been participants or beneficiaries in ERISA-governed welfare benefit plans that are, or have been, insured and/or administered by Defendant.

> Subclass B consists of all members of the Class who are, or have been, members, insureds, or subscribers of Defendant under health insurance plans or contracts that are not governed by ERISA.

Defendants raise several objections to class certification, including: (1) that, because of the self-funded nature of their respective plans, Plaintiffs may lack standing to represent the putative class; (2) that individual issues, rather than common issues, predominate; (3) that the Maryland Court of Appeals' decision in *Creveling v. Government Employees Insurance Co.*, 376 Md. 72 (2003), precludes Plaintiffs from establishing the commonality requirement for class certification; and (4) that class counsel is inadequate because of a conflict of interest. The Court will address

these issues below.

### A.      Plaintiff McCollough's Standing to Represent Subclass A

Defendant argues that class certification is inappropriate because, under Plaintiffs' own definition of the proposed class, there is a substantial possibility that McCollough, one of the named plaintiffs, will herself be excluded from the class. The class definition carves out an exclusion for members of self-funded ERISA plans,[4] and Defendant contends that the evidence will ultimately establish that McCollough's plan, through Sibley Memorial Hospital, was a self-funded plan. If so, Subclass A, which consists of members of ERISA-governed welfare benefit plans, will be without a class representative.[5]

It is axiomatic that a class representative must be a member of the proposed class. "The Supreme Court has repeatedly held that under either Rule 23(a)(4) or an unwritten pre-requisite of Rule 23, 'a class representative must be part of the class and possess the same interest and suffer the same injury as the class members.'" *Herron v. Mayor and City Council of Annapolis, Md.*, 388 F. Supp. 2d 565, 573 (D. Md. 2005) (quoting *East Texas Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977)); *see, e.g., Stambaugh v. Kansas Dep't of Corrections*, 151 F.R.D. 664, 671 (D. Kan. 1993) (class representatives' membership in class an "essential, but implied," prerequisite

---

[4]Specifically, "[e]xcluded from the Class are . . . CareFirst BlueChoice members or insureds who are or have been members of CareFirst BlueChoice through ERISA benefit plans that are self-funded within the meaning of 28 U.S.C. § 514(b)(2)(B)." Pls.' Mot. for Class Cert., at 6. Plaintiffs presumably included this carve-out because self-funded ERISA plans are exempted from state laws prohibiting or limiting subrogation, including the statute—the Maryland HMO Act—upon which Plaintiffs rest their instant claims. *See Singh v. Prudential Health Care Plan, Inc.*, 335 F.3d 278, 286 (4th Cir. 2003).

[5] Subclass B would be unaffected, as it consists of members of non-ERISA plans, who would continue to be represented by McKandes, the other named plaintiff.

to class certification); *McGlothin v. Connors*, 142 F.R.D. 626, 632 (W.D. Va. 1992) ("The Court must make an initial determination that the representatives in a class action are members of the proposed class."); *see also* Fed R. Civ. P. 23(a) (providing in part that "one or more *members* of a class" may sue as representative parties) (emphasis added).

In the present case, McCollough's membership in the putative class depends on whether the Sibley Hospital plan was insured or whether it was self-funded.[6] If the plan is shown to be self-funded, as Defendant contends, then McCollough would, under Plaintiffs' own class definition, cease to be a member of the class, and Subclass A would lose its representative plaintiff. This Court had occasion to consider the nature of the Sibley plan when it ruled upon Defendant's motion for summary judgment. At that time, Defendant came forward with substantial evidence tending to establish that the plan was self-funded. Specifically, Defendant produced a copy of the actual contract between itself and Sibley, which expressly provided that it was an "administrative services only"—that is, self-funded—plan. Although the persuasive force of this document was undercut by the fact that it was not signed until March 2000, nearly two years after McCollough paid her subrogation lien, Defendant also adduced the testimony of Michael Casarella, Defendant's Director of Account Renewal Services, who had averred in a hearing before Judge Spellbring that the Sibley Hospital plan was self-funded and that the same type of contract as the one signed in 2000 governed the plan in 1998, when McCollough made her subrogation payment. In response to this evidence, Plaintiffs produced an IRS-5500 form submitted by Sibley to the Internal Revenue Service and the

---

[6]It is undisputed that the Sibley Plan is an ERISA plan. *See* Fifth Am. Compl., ¶ 3 ("At all relevant times, Ms. McCollough was a participant, within the meaning of ERISA § 3(7), 29 U.S.C. § 1002(7), in an employer sponsored welfare benefit plan . . . within the meaning of section (3)(1) of ERISA . . . .")

Department of Labor, which categorized the plan as an insured, rather than self-funded, plan. Plaintiffs also argued that the testimony of Mr. Casarella should be given little weight because Plaintiffs had insufficient time to prepare to cross-examine him when he testified at the state court hearing.[7]

After considering all of the above, this Court denied Defendant's motion for summary judgment, finding there to be a genuine dispute of material fact as to the nature of the Sibley Hospital plan. Defendant presently argues that although Plaintiffs may have come forward with sufficient evidence to stave off summary judgment, the weight of the evidence shows that McCollough belonged to a self-funded plan. If Plaintiffs' proposed class is certified, and it is later determined at trial that the Sibley plan was indeed self-funded, then McCollough will cease to be a member of the class, and the subclass that McCollough purports to represent will lose its representative plaintiff. In addition, Defendant argues that this dispute over the nature of McCollough's plan presents an issue that is unique to her, precluding her from serving as a typical representative plaintiff.

The Court finds that Defendant has presented a convincing argument against granting class certification at the present time. While the Court previously denied Defendant's motion for summary judgment, finding that Plaintiffs had produced *some* evidence that McCollough belonged to an insured plan, that evidence was far from overwhelming, particularly in light of the direct, unrebutted testimony of Mr. Casarella. Furthermore, while a party opposing summary judgment need only

---

[7]However, in the nearly two years that had elapsed between the state court hearing and the summary judgment motion, Plaintiffs did not depose Mr. Casarella nor challenge his testimony in any meaningful way, save for their production of the aforementioned IRS-5500 form.

present sufficient evidence for a reasonable juror could find in her favor, a plaintiff seeking class certification *bears the burden* of establishing that all the prerequisites of Rule 23 have been satisfied. *Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 458 (4th Cir. 2003); *see also Bullock v. Bd. of Educ. of Montgomery County*, 210 F.R.D. 556, 558 (D. Md. 2002) (noting that "the burden of establishing class status is on the Plaintiffs" and that the court "has a duty to undertake a 'rigorous analysis' to satisfy itself that the Rule 23 requirements have been met"). Thus, at a minimum, Plaintiffs bear the burden of establishing that McCollough is a member of the proposed class—a burden they have not, in the Court's view, adequately satisfied.[8]

Plaintiffs argue that an examination of the nature of the Sibley plan constitutes an impermissible inquiry into the merits of the case. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177-78 (1974). This argument is unpersuasive. "While it is true that a trial court may not properly reach the merits of a claim when determining whether class certification is warranted, this principle should not be talismanically invoked to artificially limit a trial court's examination of the factors necessary to a reasoned determination of whether a plaintiff has met her burden of establishing each of the Rule 23 class action requirements." *Love v. Turlington*, 733 F.2d 1562, 1564 (11th Cir. 1984). As the Fourth Circuit has noted, "[i]f it were appropriate for a court simply to accept the allegations of a complaint at face value in making class action findings, every complaint asserting the requirements of Rule 23(a) and (b) would automatically lead to a certification order, frustrating the

---

[8]Although the Fourth Circuit has not precisely defined the quantum of proof necessary to sustain a plaintiff's burden under Rule 23, at least one court of appeals has suggested that the prerequisites for class certification must be proven by a preponderance of the evidence. *See Szabo v. Bridgeport Mach., Inc.*, 249 F.3d 672, 676 (7th Cir. 2001); *see also In re Initial Public Offering Sec. Litig.*, 227 F.R.D. 65, 92 (S.D.N.Y. 2004) (likening the Fourth Circuit's "likelihood of success on the merits" burden for class certification to the Seventh Circuit's preponderance of the evidence standard).

district court's responsibilities for taking a close look at relevant matters, for conducting a rigorous analysis of such matters, and for making findings that the requirements of Rule 23 have been satisfied." *Gariety v. Grant Thornton, LLP*, 368 F.3d 356, 365 (4th Cir. 2004) (internal citations and quotation marks omitted). Examining whether McCollough is actually a member of the class, and whether her claims are typical of those of putative class members, is simply part of the "rigorous analysis" that is required by Rule 23, not an improper evaluation of Plaintiffs' likelihood of success on the merits. Plaintiffs appear to suggest that courts should refrain from conducting any sort of factual inquiry when assessing the propriety of class certification, a position that is without merit. *See Gariety*, 368 F.3d at 366 ("the factors spelled out in Rule 23 must be addressed through *findings*, even if they overlap with issues on the merits") (emphasis added).

In *Popoola v. Maryland Individual Practice Assoc.*, Civil No. 211348, a case based on the same anti-subrogation provision that Plaintiffs rely upon here,[9] Judge Scrivener of the Montgomery County Circuit Court denied a request for class certification, finding that a factual dispute over the source of the benefits that led to the plaintiff's subrogation payment rendered her an atypical class representative. The court noted that while it "would still not grant summary judgment either way" on the nature of the plaintiff's insurance coverage, the existence of a dispute over that issue precluded the court from certifying a class with Popoola as the representative plaintiff. Similarly, in this case, because of the unresolved factual dispute over the nature of her benefit plan, McCollough cannot, at the present time, be permitted to serve as Subclass A's representative plaintiff. If it is ultimately determined that McCollough belonged to a self-funded ERISA plan, she will find herself excluded from the class, and Subclass A will be without a representative named

---

[9] Plaintiff's counsel in that case also represents the instant plaintiffs.

plaintiff. This Court, being mindful that "when a district court considers whether to certify a class action, it performs the public function of determining whether the representative parties should be allowed to prosecute the claims of absent class members," *Gariety*, 368 F.3d at 366-67, will not certify a class where there is a significant possibility that a named plaintiff is not a member of the subclass she purports to represent.[10] However, unlike *Popoola*, this Court will not immediately deny class certification, because it believes that the factual dispute over the Sibley Hospital Plan—that is, whether it was insured or self-funded during the relevant period of time—is capable of resolution (or at least clarification) with additional discovery. Thus, the Court will postpone its decision regarding the class certification motion to allow the parties to submit supplemental briefs, as well as engage in limited discovery, with respect to the nature of the Sibley Hospital Plan.[11] The Court

---

[10]An additional factor counseling against certification is that of the two named plaintiffs, only McCollough, whose claims arise under ERISA, asserts federal claims; McKandes advances solely common law claims of fraudulent misrepresentation and unjust enrichment. If McCollough is later excluded from the action, only state law claims will remain, and the Court will be required to determine whether to exercise its § 1367 supplemental jurisdiction over those claims or whether to relinquish jurisdiction entirely.

[11]The Court does not have the same concerns regarding the class membership of McKandes, the named representative for Subclass B, as it does with respect to McCollough, Subclass A's representative plaintiff. Although Defendant also challenges McKandes's adequacy as a class representative, Defendant does not contend that McKandes will ultimately find herself excluded from the class she purports to represent. Defendant does maintain that McKandes belonged to a self-funded plan, and that the Maryland HMO Act, which provides the basis for Plaintiffs' claims, applies only to insured, rather than self-funded, benefit plans. This argument, however, is essentially identical to the one raised in Defendant's motion for summary judgment. The Court rejected that argument in its August 31, 2005 Memorandum Opinion, finding that neither *Riemer* nor the Maryland HMO Act, upon which the *Riemer* court relied, made any distinction between fully insured or self-funded HMO plans. Therefore, the Court will decline Defendant's invitation to reconsider that conclusion now.

Having made this determination, and assuming that the prerequisites of Rule 23 are otherwise satisfied, the Court could, conceivably, permit certification of Subclass B at the present time, while deferring its ruling regarding Subclass A until the issues surrounding the nature of the Sibley Hospital Plan are resolved. However, the Court concludes that this would not be a prudent decision, given that McKandes and the putative members of Subclass B, which

14

will also allow Plaintiffs, if they so choose, to replace McCollough with a new named plaintiff, presumably one whose membership in a non-self funded ERISA plan cannot be seriously questioned. A similar decision was reached in *Popoola*, where, once the motion for class certification was denied, the plaintiff requested and was granted additional time to find an adequate representative plaintiff.[12] This Court would be amenable to granting such a request here, given that substantial resources have already been expended in prosecuting this case, that the putative class otherwise seems to satisfy the requirements of Rule 23,[13] and that courts routinely allow the substitution of a new class representative after the original representative has been disqualified. *See, e.g., Karnuth v. Rodale,* Inc., 2005 WL 1683605, at *1 (W.D. Va. 2005); *Chisolm v. Transouth Financial Corp.*, 194 F.R.D. 538, 559 (E.D. Va. 2000); *Dameron v. Sinai Hosp. of Baltimore*, 626 F. Supp. 1012, 1015 (D. Md. 1986), rev'd in part on other grounds, 815 F.2d 975 (4 th Cir. 1987); *Booth v. Prince George's County*, 66 F.R.D. 466, 473 (D. Md. 1975).

In sum, because there are substantial, unresolved questions as to whether McCollough is a

─────────────────────

consists of members of non-ERISA plans, assert only common law causes of action. As such, if Defendant successfully excludes McCollough, who brings ERISA-based claims, there will be no federal claims before the Court, casting doubt on this forum's continued exercise of supplemental jurisdiction over McKandes's state law claims. Furthermore, it was made clear at the hearing that McKandes represents only a small minority of potential class members, in that she belonged to a non-ERISA plan, while the lion's share of employee benefit plans are governed by ERISA.

[12]Popoola was replaced with two new named plaintiffs, and the complaint in that case was also amended to restate the plaintiffs' claims as ERISA claims. That case was subsequently removed by the defendant to this court and is currently pending before Judge Deborah K. Chasanow.

[13]Although Court will postpone its comprehensive analysis of Plaintiffs' Motion for Class Certification until the threshold issue of McCollough's class membership is resolved, a preliminary review of the Rule 23 factors suggests that Plaintiffs have presented a viable class action claim.

member of the class she purports to represent, Plaintiffs' Motion for Class Certification will be held in abeyance. The parties will be allowed 45 days to submit supplemental briefs, with an additional 15 days for any replies, on the discrete issue of the nature of the Sibley Hospital Plan. The Court will also allow limited discovery with respect to this issue during the briefing period. In addition, the Court notes that it would be willing to entertain a motion by Plaintiffs to amend their complaint to substitute a new representative plaintiff.

### CONCLUSION

For the reasons stated above, Defendant's Motion for Reconsideration shall be DENIED. Plaintiffs' Motion for Class Certification shall be HELD IN ABEYANCE. The parties are invited to file within 45 days supplemental memoranda addressing the question of whether the Sibley Memorial Hospital Plan was an insured or self-funded employee benefit plan. Any reply briefs shall be due 15 days thereafter. The parties will be permitted to engage in discovery with respect to this issue, including the taking of depositions, during the briefing period. Plaintiffs are directed to file any motions for leave to amend their complaint to substitute new class representatives within this period as well.

Date: <u>June 12, 2006</u>                     _____/s/_____

                                        Alexander Williams Jr.
                                        United States District Judge

16